## Case No. 6,273.

### HAYWARD v. ELIOT NAT. BANK.

[4 Cliff. 294.] [1]

Circuit Court, D. Massachusetts. May Term, 1874.[2]

EQUITY—RESPONSIVE ANSWER—TESTIMONY OF TWO WITNESSES.

1. Where the answer is responsive to the bill, positively denies the matter charged, and has respect to transactions within the knowledge of the party making it, it is evidence in favor of the respondent; and unless overcome by the testimony of two witnesses, or one witness and corroborating circumstances, the rule in equity is that the answer is conclusive.

2. The complainant pledged certain shares of stock to a bank as collateral security for a loan. The debt not being paid, the shares were sold by the bank. The complainant alleged that they were thus disposed of without notice to him, and without the opportunity, on his part, to redeem. His allegations were sustained by his own evidence, which was contradicted by one of the bank officers. Held, the complainant had not overcome the force of the allegations of the answer.

Briefly stated, the material facts alleged in the bill are that the complainant [Charles L. Hayward] at the times mentioned in the record, borrowed of the respondents [the Eliot National Bank] the sum of $26,500, and that he agreed to pay lawful interest for the same, and that he pledged with the lenders, as collateral security for the payment of the amount borrowed and lawful interest, four hundred and fifty shares of the stock of the Hecla Mining Company, which belonged to the complainant, and which, as the bill states, he caused to be issued to the respondents for that purpose; that the said mining company subsequently, by an arrangement with the Calumet Mining Company, united their property and privileges with those of the latter-named company, two other companies joining with them; and that the several companies became a new corporation, by the name of the Calumet & Hecla Mining Company, with a capital of forty thousand shares or more, whereby the respondents, as holders of the said shares, so issued to them, became entitled to and did take four hundred and fifty shares of the stock in the new corporation; that the said new company had, from time to time, after the said several com-

---

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

[2] [Affirmed in 96 U. S. 611.]

panies were united, made sundry dividends in cash and stock, by virtue of which it had divided to its stockholders valuable portions of its earnings and property. Other important matters were alleged in the bill, and the complainant prayed for an account, and that he might be allowed to redeem the shares pledged, which, as he alleged, the respondents still held as collateral security; and he charged that no valid sale had been made of said shares; that if the respondents had pretended to sell the same, or any part thereof, or had done any act or thing having a tendency to transfer the title in said shares to any other party, or had procured or permitted certificates for said shares to issue to any other persons, it had been done without notice to the complainant, without right, and in fraud of his just claims; and that the respondents then held, in fact, or were chargeable in law as holding, nine hundred shares of the capital stock of said new company for the complainant, and as collateral security for the payment of any balance due from him on account of said transactions. Process was issued and served, and the respondents appeared and filed an answer, in which they admit the loan of the amount, the pledge of the shares as collateral security, the exchange of the shares pledged for the shares of the new company, and that dividends had been declared; but they averred that the directors of the bank, on the 17th of August, 1868, voted that unless the complainant would pay $5,000 during the then present week, and $5,000 during the following week, upon the loan; having the said shares as collateral, the president be instructed to sell the same; that said vote was communicated to the complainant, and that he declined to comply in whole or in part, saying that he would not pay anything, and that he would do nothing about it; that thereupon the proposition to sell to said purchasers, and by them to buy the shares for the price and as aforesaid, was made and canvassed and determined upon; and the sale was made with the full concurrence of, and with the prior assent, and subsequent approval of, the complainant.

James M. Barrett and Edward F. Hodges, for complainant.

A. A. Ranney and B. R. Curtis, for respondent.

Before CLIFFORD, Circuit Justice, and LOWELL, District Judge.

CLIFFORD, Circuit Justice. Controversies like the present cannot be satisfactorily determined without some reference to the pleadings which immediately respect the material matters in issue, as where the answer is responsive to the bill, and positively denies the matter charged, and the denial has respect to a transaction within the knowledge of the party making it, the answer is evidence in his favor, and unless the answer is overcome by the testimony of two opposing witnesses, or of one witness corroborated by facts and circumstances which give the opposing evidence greater weight than the answer, the rule in equity is that the answer is conclusive, so that the court will neither make a decree in favor of the complainant, nor send the case to trial, but will simply dismiss the bill of complaint. Badger v. Badger [Case No. 718]. Repeated decisions of the supreme court have established the rule, that an answer responsive to the allegations of the bill, if it have respect to matters within the knowledge of the pleader and be duly sworn to, must be taken to be true, unless disproved by two witnesses, or by one witness and corroborative circumstances which give the opposing testimony greater weight than the answer. Clark's Ex'rs v. Van Reimsdyk, 9 Cranch [13 U. S.] 160; Hughes v. Blake, 6 Wheat. [19 U. S.] 453; Id. [Case No. 6,845]; Union Bank v. Geary, 5 Pet. [30 U. S.] 111. Unsworn answers do not have that effect, but if the answer be duly sworn to, even though the suit be against a corporation, and the oath be by one of its principal officers, the answer will have that effect if it be responsive to the bill, and be clear and positive in its terms. Carpenter v. Providence W. Ins. Co., 4 How. [45 U. S.] 219; Salmon v. Clagett, 3 Bland, 165; Parker v. Petteplace, 1 Wall. [68 U. S.] 689; Tobey v. Leonards, 2 Wall. [69 U. S.] 430; 2 Story, Eq. Jur. 1528. Apply that rule to the case, and it is clear that the complainant cannot recover unless the proofs introduced by him are sufficient to overcome the allegations of the answer, giving to the answer the probative force which that rule prescribes, as the bill distinctly charges that no valid sale of the shares was made; that if the respondents pretend that they did any act tending to transfer the title to the shares, or that they have procured or permitted certificates of the shares to issue to any other parties, it has been done without notice to the complainant, without right, and in fraud of his just rights. Nothing further can be required to show that the issue of notice is distinctly tendered by the complainant, and the record shows that the answer is directly responsive to the bill, and alleges that the vote of the directors to instruct the president of the bank to sell the shares, if the pledgor failed to make the required payments, was communicated to the complainant; and that he declined to make the payments, and stated that he would not pay any thing, and would not do any thing, about it, and that the sale was made with the full concurrence of, and with the prior assent and subsequent approval of the complainant. Beyond all doubt the complainant is bound to disprove the material averments of the answer, or he is not entitled to a decree for relief, as the rule is that the answer shall otherwise prevail.

On the 17th of October, 1866, the complainant borrowed of the bank the sum of $6,500,

and on the 19th of the same month he borrowed $20,000 more, which make the amount for which the shares were pledged as collateral security. None of the principal of the loans was ever paid; but on the 1st of April following, the complainant paid interest to the amount of $837.66, which is all that he ever paid towards the principal or interest of the loans. Seven months and more elapsed after that payment without any other payment being made, or any steps being taken by the bank to enforce payment, when, on the 9th of November of that year, the complainant gave the president and directors of the bank authority in writing to sell the shares pledged, at their discretion, describing the shares in the writing as shares held as collateral security for a loan, proceeds of sale to be applied upon said loan. Shares of the kind were selling, at that time, for $37 to $38 per share, including the assessment of $18 which the bank had paid or was liable to pay, on the respective shares in controversy, from which it appears that if the president and directors had sold the shares, as they were authorized to do, $20 per share only would have been realized to apply to the payment of the loan, which would have left a deficit, to be borne by the complainant, of not less than $15,000. Considerations of the kind doubtless induced the respondents to defer the sale, and they kept the shares, on the original terms, until Sept. 8, 1868, when they sold the whole amount to three of their directors for an amount which it was understood would be equal to the whole loan, the unpaid interest and charges being $87.24 per share, which the proofs show was considerably above the market value.

Much discussion of the question whether the complainant was apprised that the directors had voted to instruct the president of the bank to sell the shares, in case he, the complainant, failed to make the two payments specified in that vote, is unnecessary, as he admits that a copy of the vote was received by him at its date. Direct and explicit proof to that effect was also introduced by the respondents, as appears in the depositions of the president and cashier. Instead of objecting to the proposed action of the bank, he stated to the president, who gave him no notice, that he could do nothing in relation to the matter, as he had no means; that the only thing the bank could do was to sell the shares for the most they could get, and that if he was ever able he would pay the balance, if any remained. Inquiry was made of him, by the president, if he had no friend who would take the stock out of the bank and hold it for his benefit, and he answered in the negative. Unable to obtain any encouragement from the complainant that he could do any thing, the president, with the assent of all the other directors, except one who was absent, sold the shares to the three directors named in the answer, in equal proportions of one hundred and fifty shares.

Proof entirely satisfactory is exhibited in the record that all the other directors present fully approved the act of sale, and that the president, in making it, acted throughout by their authority. Abundant proof is also exhibited to show that the complainant was informed, before the sale was made, that the three directors proposed to make the purchase, and that he assented to the suggestion that it might be sold to them as proposed. Suffice it to say, without entering into the details of the evidence, that the proof to that effect is full and entirely satisfactory.

Information as to the proposed sale was communicated to the complainant by the then president of the bank, and he reported to the directors that he, the complainant, assented to it, or that he made no objection to the proposal. Three or four witnesses confirm these facts, and there is nothing of any moment to contradict their statements, except the testimony of the complainant. His statements are very positive that he never assented to the sale of the shares; but the great weight of the evidence is the other way. Superadded to that, he also states that he did not know that the shares had been sold, and that he never heard of the sale until the answer of the respondents was shown to him, as filed in this case. His statements in that behalf are very positive; but he admits that he received exhibit No. 21, on the day the sale took place, which is a plain statement of the account between him and the bank, including a credit of cash to balance the amount of $39,-257.16, which he must have understood was realized from the sale of the shares pledged as collateral security for the loan, as it could not have been realized in any other way. Evidence was also introduced by the respondents that he not only assented that shares might be sold before the sale took place, but that he expressed himself subsequently as gratified at the result. Express statements to that effect are made by the cashier of the bank. He states that he had a conversation with the complainant subsequent to the sale, and that he expressed himself as highly gratified at being relieved from the embarrassment by the settlement of the matter of the loan.

Interest, it appears from the said exhibit, was cast, in making up the statement, at six per cent, which, as explained by the testimony of the cashier, was a mistake, the same having been computed in his absence; but it was corrected on his return, as appears by another exhibit in the record. Correctly computed, the interest was $464.16 more than as computed at six per cent, from which it appears that a deduction of $375.03 should be made, for a balance due to the complainant on the sale of some other bonds. Deduct that sum, and there is still due from the complainant the sum of $62.52, which the respondents claim that the complainant promised to pay. In relation to that sum there is considerable conflict between the tes-

timony of the former president of the bank, and the other witnesses. Demorett, the former president, states explicitly that the complainant promised to pay a balance, between $60 and $70, when he could; that he understood that it was the difference between six and seven per cent discovered by the cashier in reviewing the computation of the interest which the complainant paid during the first year of the loan. On the other hand, the cashier states that there was a small sum of $60 or $70 due to the bank after applying the proceeds of the sale of the shares which the complainant promised to pay when he should be able, and his explanation is that, on his return to the bank, he found that interest had been computed at six per cent, which he corrected, and on making the deduction of the said balance due in the former transaction, it left this small sum due to the bank, which the complainant, in a subsequent conversation, promised to pay. Difficulty attends the solution of the matter, but it is quite manifest that the former president is in error as to the origin of the small balance, in supposing that it arose from the difference between six and seven per cent in computing the interest paid four years earlier, as the books of the bank show that the computation on that occasion was correct, or that thirty-four cents in excess of seven per cent was paid. Support to the view that Demorett is in error as to the origin of the small balance is also derived from the answer which is sworn to by the cashier, whose means of knowledge is greater than that of the other witness. Importance is attached to the difference between the witnesses chiefly upon the ground that it has some bearing upon their credit as to the more important matter whether the complainant knew of the sale of the shares, and approved it after it was made. Most explicit allegations to that effect are contained in the answer; and, inasmuch as the answer is directly responsive to the bill, the court is of the opinion that it is evidence for the respondents, and that the complainant has failed to overcome the allegations of notice, assent, and subsequent approval.

Bill of complaint dismissed, with costs.

[An appeal was then taken by the plaintiff to the supreme court, where the judgment was affirmed in an opinion by Mr. Justice Harlan, who said that, as Hayward had acquiesced so long in the matter before bringing suit, he should be held to have forfeited all right to relief in a court of equity. 96 U. S. 611.]